## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

JOE PERRY,

        Plaintiff,

    v.

OCNAC #1 FEDERAL C.U., and/or
its agents; NCUA, and or its
agents; JOHN DOES 1-99,

        Defendants.

Civil No. 19-167 (NLH/KMW)

**OPINION**

_____

**<u>APPEARANCES</u>:**

MONTELL FIGGINS
17 ACADEMY STREET
SUITE 305
NEWARK, NJ 07102

    *Attorneys for Plaintiff Joe Perry.*

JESSICA ROSE O'NEILL
OFFICE OF THE U.S. ATTORNEY
DISTRICT OF NEW JERSEY
401 MARKET STREET
4TH FLOOR
P.O. BOX 2098
CAMDEN, NJ 08101

    *Attorneys for Defendant National Credit Union*
    *Administration.*

JOHN DONOVAN SHEA
LITCHFIELD CAVO, LLP
1800 CHAPEL AVENUE WEST
SUITE 360
CHERRY HILL, NJ 08002

ASHLEY D. HOBSON
LITCHFIELD CAVO, LLP
1800 CHAPEL AVENUE WEST
SUITE 360
CHERRY HILL, NJ 08002

*Attorneys for Defendant OCNAC #1 Federal Credit Union.*

**HILLMAN**, District Judge

In this action, Plaintiff Joe Perry ("Plaintiff") alleges that Defendants National Credit Union Administration ("NCUA") and OCNAC #1 Federal Credit Union ("OCNAC") (collectively, "Defendants") are liable for damages arising from unauthorized transfers from Plaintiff's financial accounts. This matter comes before the Court on Defendants' motions to dismiss Plaintiff's first amended complaint. For the reasons expressed below, these motions will be granted.

## BACKGROUND

We take our recitation of the facts from Plaintiff's and first amended complaint.

On or about July 9, 2014, Plaintiff opened two accounts with OCNAC. (ECF No. 21 ("FAC" or "Amended Complaint") at ¶1).[1] Shortly after doing so, Plaintiff relocated and informed OCNAC that it needed to update his mailing address accordingly. (FAC at ¶2). At his new address, Plaintiff received various

---

[1] The Amended Complaint contains multiple paragraphs bearing the number one (1). For clarity, all references to the Amended Complaint refer to the paragraphs located under the Amended Complaint's *Facts Common To All Counts* section.

communications from OCNAC but alleges he never received quarterly account statements.  (FAC at ¶2).

On March 30, 2017, Plaintiff visited OCNAC's offices and learned of several unauthorized transfers from his accounts. (FAC at ¶3).  Plaintiff's initial complaint explains that these transactions occurred between July 10, 2014 and April 22, 2015.[2] (ECF No. 1-1 ("Initial Comp." or "Initial Complaint") at 11). Plaintiff asserts that these transfers – which occurred by check, transfer, and Automated Clearing House (ACH) payment – were initiated by his estranged wife who he never authorized to access these accounts.  (FAC at ¶3).  Plaintiff disputed these transactions with OCNAC. (FAC at ¶4).

On May 20, 2017, Plaintiff also filed a complaint with NCUA relating to these unauthorized transactions.  (FAC at ¶6). Plaintiff sought, as a remedy, a refund of the total amount withdrawn without his authority.  (FAC at ¶6).

Around that same time, on July 26, 2017, Plaintiff wrote OCNAC requesting resolution of his claim.  (FAC at ¶9).  On August 2, 2017, OCNAC denied Plaintiff's claim on the basis that he failed to notify OCNAC within 60 days of the unauthorized transactions, as was required under OCNAC's account-holder

---

[2]  The Amended Complaint does contain the dates during which the unauthorized transactions allegedly occurred.  As such, the Court relies upon Plaintiff's Initial Complaint for this information.

agreement.[3]  (FAC at ¶10).

On October 2, 2017, NCUA denied Plaintiff's complaint on
the grounds that the transactions at issue were not
"unauthorized[,]" as that term is defined by the Electronic Fund
Transfer Act, 15 U.S.C. § 1693 *et seq.* (the "EFTA").  (FAC at
¶11).  Plaintiff was advised of his appeal rights and
subsequently retained counsel to appeal NCUA's decision. (FAC at
¶¶11-12).  Plaintiff's appeal was unsuccessful.  (FAC at ¶12).

On December 4, 2018, Plaintiff filed the Initial Complaint
in the Superior Court of New Jersey, Camden County.  NCUA
removed the action to this Court on January 7, 2019.  Plaintiff
filed the Amended Complaint on May 14, 2019.  The Amended
Complaint contains four (4) counts:

- Count One sounds in negligence, and is brought against
  all Defendants;

- Count Two sounds in breach of contract, and is brought
  against all Defendants;

- Count Three is brought against OCNAC for alleged
  violations of the EFTA; and

- Count Four is brought against NCUA for alleged
  violations of the Federal Credit Union Act ("FCUA"),
  12 U.S.C. § 1751 *et seq.*

---

[3] The Amended Complaint and OCNAC's papers refer generally to an
account-holder agreement.  The Amended Complaint does not
explain the relevancy of this agreement.  Neither Plaintiff nor
OCNAC identify the parties to any such agreement.  Absent a more
detailed explanation of the purported agreement, the Court is
unable to discern what relevancy, if any, the agreement has to
the present action.

Defendants moved to dismiss the Amended Complaint on May 28, 2019 and June 17, 2019 respectively (the "Motions to Dismiss"). (ECF Nos. 22 & 25). Plaintiff opposed Defendants' Motions to Dismiss. (ECF No. 26). As such, the present motions are fully briefed and ripe for adjudication.

## DISCUSSION

### A. Subject Matter Jurisdiction

Plaintiff filed this action against several defendants, including NCUA, which is a federal agency. NCUA removed this action to this Court pursuant to 28 U.S.C. § 1442(a)(1). This Court exercises subject matter jurisdiction pursuant to that statute.

### B. Motion to Dismiss Standard

NCUA seeks to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or otherwise for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). OCNAC also asks this Court to dismiss the Amended Complaint pursuant to Rule 12(b)(6).

#### 1. Federal Rule of Civil Procedure 12(b)(1) Standard

Under Federal Rule of Civil Procedure 12(b)(1), a claim can be dismissed for "lack of jurisdiction over the subject matter." A motion under Rule 12(b)(1) "attacks the right of a plaintiff to be heard in Federal Court." Doughty v. U.S. Postal Serv.,

359 F. Supp. 2d 361, 364 (D.N.J. 2005) (quoting Cohen v.
Kurtzman, 45 F. Supp. 2d 423, 428 (D.N.J. 1999)).  There are two
types of Rule 12(b)(1) motions: one which presents a "facial
challenge" and one which presents a "factual challenge."  See
Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir.
2014) (citing In re Schering Plough Corp. Intron, 678 F.3d 235,
243 (3d Cir. 2012)); Petruska v. Gannon Univ., 462 F.3d 294, 302
n.3 (3d Cir. 2006) (citing Mortensen v. First Fed. Sav. & Loan
Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

     If a motion to dismiss presents a "facial attack," a court
must assume the allegations in a complaint are true and may only
dismiss claims when the pleadings fail to present an action
within a court's jurisdiction.  Mortensen, 549 F.2d at 891.
"[I]n that respect such a Rule 12(b)(1) motion is similar to a
Rule 12(b)(6) motion."  Petruska, 462 F.3d at 302 n.3 (citing
Mortensen, 549 F.2d at 891).  By contrast, when the motion to
dismiss presents a factual attack,

> there is substantial authority that the trial court is
> free to weigh the evidence and satisfy itself as to
> the existence of its power to hear the case.  In
> short, no presumptive truthfulness attaches to
> plaintiff's allegations, and the existence of disputed
> material facts will not preclude the trial court from
> evaluating for itself the merits of jurisdictional
> claims.  Moreover, the plaintiff will have the burden
> of proof that jurisdiction does in fact exist.

Mortensen, 549 F.2d at 891; see also Aichele, 757 F.3d at 358
(explaining differences between a facial and factual attack

under Rule 12(b)(1)).

## 2. <u>Federal Rule of Civil Procedure 12(b)(6) Standard</u>

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957); <u>Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.</u>, 40 F.3d 247, 251 (7th Cir. 1994); and then citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a
> court must take three steps. First, the court must
> "tak[e] note of the elements a plaintiff must plead to

7

state a claim."  Second, the court should identify
allegations that, "because they are no more than
conclusions, are not entitled to the assumption of
truth."  Third, "whe[n] there are well-pleaded factual
allegations, a court should assume their veracity and
then determine whether they plausibly give rise to an
entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations

in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556

U.S. 662, 664, 675, 679 (2009)).  A court may "generally

consider only the allegations contained in the complaint,

exhibits attached to the complaint and matters of public

record."  Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014)

(citing Pension Benefit Guar. Corp. v. White Consol. Indus.,

Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks

"not whether a plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support the claim."

Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416

U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our

decision in Twombly expounded the pleading standard for 'all

civil actions' . . . .");  Fowler v. UPMC Shadyside, 578 F.3d

203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in

the coffin for the 'no set of facts' standard that applied to

federal complaints before Twombly.").  "A motion to dismiss

should be granted if the plaintiff is unable to plead 'enough

facts to state a claim to relief that is plausible on its

face.'" <u>Malleus</u>, 641 F.3d at 563 (quoting <u>Twombly</u>, 550 U.S. at 570).

**C. Analysis**

### 1. <u>Count I: Negligence Against All Defendants</u>

Plaintiff alleges that Defendants negligently failed to detect and prevent the unauthorized transactions at issue. (FAC at ¶¶20-24). Plaintiff further alleges that NCUA is negligent for not having supervised OCNAC adequately. (FAC at ¶25).

#### a. <u>Negligence Claim Against NCUA</u>

NCUA argues that Plaintiff's negligence claim fails as a matter of law because Plaintiff failed to comply with the administrative claim requirements set forth in the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401, 2671, *et seq.*, thereby depriving this Court of subject matter jurisdiction. (ECF No. 22-1 ("NCUA Br.") at 6).

Plaintiff argues that he substantially complied with the FTCA and that any non-performance should be excused as a mere procedural misstep. (ECF No. 26 ("Pl. Br.") at 7-9). Plaintiff argues that, should the Court find insufficient compliance with the FTCA, the appropriate remedy would be to place the matter in abeyance as opposed to dismissing it, as doing so would implicate the statute of limitations. (Pl. Br. at 9).

i.   The FTCA

    The United States has sovereign immunity except where it
consents to be sued.  Giovanni v. United States Dep't of the
Navy, 906 F.3d 94, 117 (3d Cir. 2018); United States v. Bormes,
568 U.S. 6, 133 S. Ct. 12, 16, 184 L. Ed. 2d 317 (2012); United
States v. Mitchell, 463 U.S. 206, 212, 103 S. Ct. 2961, 77 L.
Ed. 2d 580 (1983).

    In the absence of such a waiver of immunity, Plaintiff
cannot proceed in an action for damages against the United
States.  See FDIC v. Meyer, 510 U.S. 471, 484-87, 114 S. Ct.
996, 127 L. Ed. 2d 308 (1994).  The FTCA constitutes a limited
waiver of the sovereign immunity of the United States.  28
U.S.C. § 2679(b)(1); White-Squire v. United States Postal
Service, 592 F.3d 453, 456 (3d Cir. 2010).  The FTCA gives a
district court exclusive jurisdiction over civil actions:

        [1] against the United States, [2] for money damages,
        ... [3] for injury or loss of property, ... [4] caused
        by the negligent or wrongful act or omission of any
        employee of the Government [5] while acting within the
        scope of his office or employment, [6] under
        circumstances where the United States, if a private
        person, would be liable to the claimant in accordance
        with the law of the place where the act or omission
        occurred.

Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir.
1995) (quoting 28 U.S.C. § 1346(b)); see also United States v.
Muniz, 374 U.S. 150, 83 S. Ct. 1850, 10 L. Ed. 2d 805 (1963).

                            10

ii.  Whether Plaintiff Can Pursue A Tort Action
            Against NCUA

A plaintiff may sue only the United States under the FTCA,
as opposed to specific governmental agencies, and the plaintiff
must first present the claims to a federal agency and receive a
final decision before filing a lawsuit.  28 U.S.C. §§
1346(b), 2675(a); McNeil v. United States, 508 U.S. 106, 111,
113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993); see also Coffey v.
Fed. Bureau of Prisons, No. 15-231, 2015 U.S. Dist. LEXIS 61161,
2015 WL 2185518, at *4 (D.N.J. May 11, 2015).

As used in the FTCA, the term "federal agency" includes the
"executive departments, the judicial and legislative branches,
the military departments, independent establishments of the
United States, and corporations primarily acting as
instrumentalities or agencies of the United States[.]"  28
U.S.C. § 2671.

NCUA is a federal agency.  See Winston v. Interfaith Fed.
Credit Union, No. 15-6558, 2015 U.S. Dist. LEXIS 176523, *1
(D.N.J. Oct. 26, 2015); National Credit Union Administration,
https://www.ncua.gov/about-ncua ("[c]reated by the U.S. Congress
in 1970, the National Credit Union Administration is an
independent federal agency that insures deposits at federally
insured credit unions, protects the members who own credit
unions, and charters and regulates federal credit unions.").

11

This Court does not have jurisdiction to hear tort claims

brought against federal agencies.  Floyd v. United States, No.

10-66, 2010 U.S. Dist. LEXIS 71039, *5-6 (W.D.N.C. July 14,

2010) ("28 United States Code, Section 1346(b) confers

jurisdiction on a federal district court to hear claims sounding

in tort against the United States, not against its agencies.").

As previously explained by this District, this Court's

jurisdiction

> does not encompass would-be FTCA claims which are
> asserted against federal agencies or employees.
> Mignogna v. Sair Aviation, Inc., 937 F.2d 37, 41 (2d
> Cir. 1991) (FTCA confers jurisdiction only when United
> States, rather th[a]n federal agency, is named);
> Galvin v. Occupational Safety & Health Admin., 860
> F.2d 181, 183 (5th Cir. 1988) (federal courts have no
> FTCA jurisdiction over claims brought against federal
> agency or employee); Kieffer v. Vilk, 8 F. Supp. 2d
> 387 (same); Denney v. United States Postal Serv., 916
> F. Supp. 1081, 1083 (D. Kan. 1996) (same): Mokwue v.
> United States, 884 F. Supp. 228, 231 (N.D. Tex. 1995)
> (same); Murphy v. Mayfield, 860 F. Supp. 340, 343
> (N.D. Tex. 1994) (same); McKenith v. United States,
> 771 F. Supp. 670, 673 (D.N.J. 1991) (same); see
> also Allgeier v. United States, 909 F.2d 869, 871 (6th
> Cir. 1990) ("failure to name the United States as
> defendant in an FTCA suit results in a fatal lack of
> jurisdiction").

Gilberg v. Stepan Co., 24 F. Supp. 2d 325, 346-47 (D.N.J.

1998).  Therefore, to the extent Plaintiff's Amended

Complaint purports to bring a negligence claim against

NCUA, that claim must fail.  NCUA argues that the United

States must be substituted for NCUA as the real party in

interest.  See (NCUA Br. at 7, n.4).  For purposes of

completeness, the Court will continue its analysis by substituting the United States of America for NCUA as the real party defendant to determine whether Plaintiff's claim may nonetheless proceed.

### iii. Statutory Exhaustion of Administrative Remedies

Chapter 171 of Title 28 pertains to the tort claims procedure for FTCA claims. 28 U.S.C. §§ 2671-2680. Section 2675 requires that an FTCA action "shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . ." 28 U.S.C. § 2675(a). "The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." McNeil, 508 U.S. at 113. This administrative exhaustion "requirement is jurisdictional and cannot be waived." Shelton v. Bledsoe, 775 F.3d 554, 569 (3d Cir. 2015) (citation omitted). "Accordingly, exhaustion of administrative remedies is a jurisdictional prerequisite to the bringing of a claim under the FTCA." Agae v. United States, 125 F. Supp. 2d 1243, 1246 (D. Haw. 2000) (citing McNeil, 508 U.S. at 112)

### iv.  Statutory Sum-Certain Demand

28 U.S.C. § 2675(b) further states that an FTCA action
"shall not be instituted for any sum in excess of the amount of
the claim presented to the federal agency . . . ."  28 U.S.C. §
2675(b).  This provision "anticipates that the claim will be for
a definite amount."  White-Squire, 592 F.3d at 457 (quoting
Adams v. United States, 615 F.2d 284, 292 n.17 (5th Cir.
1980)).  "Because the requirements of presentation and a demand
for a sum certain are among the terms defining the United
States's consent to be sued, they are jurisdictional."  Id.
(citations omitted); Bialowas v. United States, 443 F.2d 1047,
1049 (3d Cir. 1971) (noting that the requirement to present a
claim to the agency "is jurisdictional and cannot be waived").

### vi. Analysis

In the context of a motion to dismiss for lack of subject
matter jurisdiction pursuant to Rule 12(b)(1), it is Plaintiff's
burden to prove that jurisdiction does in fact exist.
Mortensen, 549 F.2d at 891 ("[b]ecause at issue in a factual
12(b)(1) motion is the trial court's jurisdiction - its very
power to hear the case - there is substantial authority that the
trial court is free to weigh the evidence and satisfy itself as
to the existence of its power to hear the case.  In short, no
presumptive truthfulness attaches to plaintiff's allegations,
and the existence of disputed material facts will not preclude

the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.").

Where a plaintiff fails to show that they exhausted their administrative remedies under the FTCA, dismissal for lack of subject matter jurisdiction is an appropriate remedy.[4]  See Id.; White-Squire, 592 F.3d at 458 ("a claimant's failure to present her FTCA claim to the appropriate agency with a sum certain, as required by § 2675(b), compels the conclusion that a district court lacks subject matter jurisdiction over the claim.").

Plaintiff has not alleged, let alone established, that this Court has proper subject matter jurisdiction over this claim. Plaintiff does not allege or otherwise provide evidence to support a finding that a proper FTCA claim was filed.  Nor has Plaintiff alleged that he presented a sum-certain demand, as is required by the statute.  See White-Squire, 592 F.3d at 457. These are jurisdictional defects that deprive this Court of subject matter jurisdiction over this claim.  As such, the Court will dismiss this claim as against the NCUA (more properly, the United States) pursuant to Rule 12(b)(1).

---

[4] For this reason, the Court will reject Plaintiff's argument that holding this matter in abeyance would constitute an appropriate remedy.  Plaintiff has not cited to any authority suggesting that a contrary conclusion would be proper.

b. Negligence Claim Against OCNAC

OCNAC argues that Plaintiff's negligence claim must be dismissed because it was filed outside of the statute of limitations periods of the EFTA (for electronic transactions) and the Uniform Commercial Code ("UCC") (for non-electronic transactions). (ECF No. 25-1 ("OCNAC Br.") at 4-5). Plaintiff does not address OCNAC's UCC argument and argues solely that the Amended Complaint complies with the EFTA's statute of limitations.

Plaintiff's negligence claim is governed by the EFTA to the extent it involves electronic transfers, and the UCC to the extent it involves non-electronic transfers. The Court addresses each in turn.

i. Claims Governed the EFTA

a. The EFTA

The EFTA was enacted "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems," particularly with regard to individual consumer rights. Golden-Koether v. JPMorgan Chase Bank, N.A., No. 11-3586, 2011 U.S. Dist. LEXIS 136472, *3-4 (D.N.J. Nov. 29, 2011) (quoting 15 U.S.C. § 1693(b)). It provides a "private cause of action for a consumer to seek damages for financial institutions' unauthorized electronic transfer of funds from the

16

consumer's account."  Id. (citing 15 U.S.C. §§ 1693a, 1693m;

Raine v. Reed, 14 F.3d 280, 283 (5th Cir. 1994)).

As relevant to this action, the term "unauthorized

electronic fund transfer" means "an electronic fund transfer

from a consumer's account initiated by a person other than the

consumer without actual authority to initiate such transfer and

from which the consumer receives no benefit[.]"  15 U.S.C. §

1693a.  The parties do not dispute that, as pled, the

unauthorized withdrawals at issue fall within this statutory

definition.

### b. 60-day Notice

The EFTA's implementing regulations require consumers to

"report an unauthorized electronic fund transfer that appears on

a periodic statement within 60 days of the financial

institution's transmittal of the statement to avoid liability

for subsequent transfers."  12 C.F.R. § 205.6(b)(3).  Notice to

a financial institution is given when "a consumer takes steps

reasonably necessary to provide the institution with the

pertinent information, whether or not a particular employee or

agent of the institution actually receives the information."  12

C.F.R. § 205.6(b)(5)(i).  "If the consumer fails to report

within 60 days, there is no requirement that they be reimbursed

for losses that could have been prevented if they had reported

the unauthorized transaction."  15 U.S.C. § 1693g(a).

17

In this present action, the parties disagree about whether Plaintiff provided adequate notice under the EFTA. While Plaintiff argues the he provided notice "within the 60 days after discovering the unauthorized transactions[,]" (Pl. Br. at 13), the statute's notice requirement is more demanding: it requires Plaintiff to provide notice within sixty days of the date on which the unauthorized transfer first appeared on the account statement. See 12 C.F.R. § 205.6(b)(3).

Plaintiff's Initial Complaint states that the unauthorized transactions at issue occurred between July 10, 2014 and April 22, 2015. (Initial Comp. at 11). Plaintiff's Amended Complaint confirms that Plaintiff did not alert OCNAC to these transactions until, at the earliest, March 30, 2017. See (FAC at ¶¶3-4). Nonetheless, this Court lacks any information regarding when these unauthorized transactions first appeared on an account statement, which is the operative piece of information necessary to determine whether Plaintiff complied with the notice requirement. See 12 C.F.R. § 205.6(b)(3). While proof of Plaintiff's untimely notice may limit OCNAC's liability for transactions following the first unauthorized transaction, it does not necessarily complete the EFTA analysis, and, as set forth below, is otherwise irrelevant for purposes of determining whether the Amended Complaint can proceed before this Court.

## c. The EFTA's One Year Statute of Limitation Period

By statute, EFTA claims must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1693m(g) ("[w]ithout regard to the amount in controversy, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation"); Golden-Koether, 2011 U.S. Dist. LEXIS 136472, at *5. "The statute of limitations begins to run ten days after the consumer provides the oral or written notice of the alleged error to the financial institution." Id. (citing Berenson v. Nat'l Fin. Servs., LLC, 403 F. Supp. 2d 133, 145 (D. Mass. 2005)); Scheffler v. TD Bank, N.A., No 18-6688, 2019 U.S. Dist. LEXIS 6998, *12 (D.N.J. Jan. 15, 2019).

Plaintiff learned of the unauthorized transactions at issue on March 30, 2017. (FAC at ¶3). As Plaintiff alleges, "[i]mmediately upon learning of these unauthorized transactions, [Plaintiff] disputed the[m] with . . . OCNAC[.]" (FAC at ¶4). As such, the EFTA's one-year statute of limitations period began running on April 9, 2017. Plaintiff's Initial Complaint was filed in December of 2018, far more than one-year after he notified OCNAC of the unauthorized transactions. As such, Plaintiff failed to comply with the EFTA's statute of limitations and this claim is therefore time-barred.

19

d. Claims Governed by the UCC

Under the UCC, an action involving a negotiable instrument triggers the statute of limitations at the time the check is negotiated; that is, "the statute of limitations begins to run at the time the check amount is debited from the maker's account." Psak, Graziano, Piasecki & Whitelaw v. Fleet Nat. Bank, 915 A.2d 42, 45 (N.J. Super. Ct. App. Div. 2007) (quoting New Jersey Lawyers' Fund for Client Protection v. Pace, 863 A.2d 402 (N.J. Super Ct. App. Div. 2005), aff'd per curiam, 892 A.2d 661 (N.J. 2006)); accord Menichini v. Grant, 995 F.2d 1224, 1230 (3d Cir. 1993). Any action to enforce an obligation, duty, or right must be commenced within three years after the cause of action accrues. N.J. Stat. § 12A:4-111.

Despite Plaintiff's arguments to the contrary, the time at when a plaintiff discovers the alleged error is not relevant "in determining the date of accrual of a cause of action under the UCC[.]" Pace, 863 A.2d at 404. Put differently, the discovery rule simply does not apply. New Jersey Lawyers' Fund for Client Protection v. Pace, 892 A.2d 661, 662 (N.J. 2006) (quoting Menichini, 995 F.2d at 1230) ("The court's approach is consistent with the premise that application of 'the discovery rule to negotiable instruments [would be] inimical to UCC policies of finality and negotiability.'").

The transactions at issue occurred between July 10, 2014

and April 22, 2015.  (Initial Comp. at 11).  Therefore, under

the UCC, the statute of limitations began running, at the very

latest, on April 22, 2015.  Plaintiff did not file the Initial

Complaint until December 4, 2018, more than three years later.

As such, Plaintiff failed to comply with the UCC's statute of

limitations.  Therefore, to the extent Plaintiff's negligence

claim is governed by the UCC, it must be dismissed.

### 2. Count II: Breach of Contract Against All Defendants

Both Defendants argue, albeit for different reasons, that

Plaintiff's breach of contract claim must be dismissed.

NCUA argues that Plaintiff fails to allege he is a party to

any contract with NCUA, and further, that even if Plaintiff had

a contract with NCUA, jurisdiction to hear Plaintiff's breach of

contract action likely rests exclusively with the Court of

Federal Claims.  (NCUA Br. at 9-10).

OCNAC argues that the breach of contract claim must be

dismissed because Plaintiff failed to comply with a customer

agreement by not alerting the bank to the fraudulent

transactions within 60 days.[5]  (OCNAC Br. at 8).

"To prevail on a breach of contract claim under New Jersey

law, a plaintiff must establish three elements: (1) the

---

[5] Because the Court finds that Plaintiff fails to state a *prima
facie* claim for breach of contract, the Court need to reach
OCNAC's more nuanced argument.

existence of a valid contract between the parties; (2) failure
of the defendant to perform its obligations under the contract;
and (3) a causal relationship between the breach and the
plaintiff's alleged damages." McMullen v. Ocwen Loan Servicing,
LLC, No. 16-4120, 2017 U.S. Dist. LEXIS 25339, *8 (D.N.J. Feb.
23, 2017) (Hillman, J.) (quoting Grande Village LLC v. CIBC
Inc., No. 14-3495, 2015 U.S. Dist. LEXIS 27384, 2015 WL 1004236,
at *5 (D.N.J. March 6, 2015)). Under New Jersey law, the
applicable statute of limitations period for generic breach of
contract claims is six (6) years. N.J. Stat. § 2A:14-1.

Plaintiff has not pled that he has a contractual
relationship with either Defendant. The Amended Complaint
asserts only that "Defendants breached their contractual
obligation to make their best efforts to protect the assets of
[Plaintiff] from being withdrawn by unauthorized individuals."
(FAC at ¶29). Plaintiff fails to plead what contract required
Defendants to perform such actions, and when any alleged breach
occurred.[6] Of additional relevancy, Plaintiff fails to plead the

---

[6] While OCNAC's arguments appear to assume that Plaintiff's
breach of contract action relates to purported violations of a
customer agreement, the Court cannot draw such an inference from
Plaintiff's Amended Complaint. To infer such a limitation would
be an abuse of judicial authority and could work to limit
Plaintiff's claims in a manner Plaintiff has not intended. It
is possible, from the Amended Complaint, that Plaintiff's
allegations relate to some other contract between the parties.
Either way, Plaintiff failed to sufficiently plead the breach of
contract claim in a manner "showing that [he] is entitled to

amount he seeks to recover in damages.[7]  As such, Plaintiff

cannot state a *prima facie* case for breach of contract.[8]

Therefore, Plaintiff's breach of contract claim will be

dismissed, without prejudice.

 To the extent Plaintiff can establish that a valid contract

between the parties exists, and that Defendants somehow breached

their contractual obligations, Plaintiff may file a second

amended complaint consistent with this Opinion and the Order

that follows, within twenty (20) days hereof.

---

relief[.]"  Fed. R. Civ. P. 8(a)(2).

[7] "Under the Tucker Act, the Court of Federal Claims has
exclusive jurisdiction over non-tort claims against the
Government for greater than $10,000."  Marquis v. Farm Serv.
Agency, No. 14-6715, 2017 U.S. Dist. LEXIS 15849, *6 (D.N.J.
Feb. 2, 2017) (quoting Clinton v. Goldsmith, 526 U.S. 529, 539
n.13, 119 S. Ct. 1538, 143 L. Ed. 2d 720 (1999)); 28 U.S.C.
§1346(a).  Plaintiff's Initial Complaint suggests that the
amount at issue far exceeds $10,000.  See (Initial Comp. at 11,
22) (providing a list of allegedly unauthorized transactions
exceeding $10,000.  The Initial Complaint's allegations
regarding damages do not appear in the Amended Complaint, which
is the operative pleading before this Court.  As such, the Court
cannot conclusively determine, from the operative pleading
before it, whether Plaintiff's alleged damages exceed $10,000.
If they do, this Court lacks jurisdiction to hear Plaintiff's
breach of contract claim against NCUA.  See 28 U.S.C. §1346(a).
Should Plaintiff elect to file a second amended complaint,
Plaintiff must clearly identify the amount in damages he seeks
so that this Court may determine whether it has proper
jurisdiction to hear this claim.

[8] Having found that Plaintiff fails to state a claim against NCUA
for breach of contract, the Court need not address NCUA's
alternative argument that jurisdiction more properly lies with
the Court of Federal Claims.

### 3. Count III: Allegations Against OCNAC Pursuant to the EFTA

The Amended Complaint alleges that OCNAC failed to employ proper procedures for addressing unauthorized electronic fund transfers and otherwise failed to adequately investigate Plaintiff's claims.  (FAC at ¶¶34-37).

OCNAC argues that Plaintiff's claim must be dismissed as it was filed outside of the appropriate statute of limitations. (OCNAC Br. at 4-6).

For the reasons discussed in section (C)(1)(b)(i) of this Opinion, supra, Plaintiff's EFTA claims are untimely, and must be dismissed.

### 4. Count IV: Plaintiff's Allegations Against NCUA Pursuant to the FCUA fail as the FCUA Does Not Provide For A Private Right Of Action

NCUA argues that Plaintiff's FCUA claim fails as the FCUA does not create a private right of action.  (NCUA Br. at 11). Plaintiff argues that an express private right of action does exist, or otherwise, must be implied.  (Pl. Br. at 10).

In the Third Circuit, the "relevant inquiry for determining whether a private right of action exists appears to have two steps: (1) Did Congress intend to create a personal right?; and (2) Did Congress intend to create a private remedy?"  Wisniewski v. Rodale, Inc., 510 F.3d 294, 301 (3d Cir. 2007) cert. denied 555 U.S. 814 (2008); Bakos v. Am. Airlines, Inc., 748 Fed. Appx.

468, 473-74 (3d Cir. 2018).[9]  As <u>Wisniewski</u> directs, "[o]nly if

the answer to both of these questions is 'yes' may a court hold

that an implied private right of action exists under a federal

statute."  <u>Wisniewski</u>, 510 F.3d at 301.

Plaintiff has not provided citation to any authority

demonstrating that Congress intended the FCUA to provide a

personal or private right of action.  Although not binding on

this Court, existing authority is to the contrary and is

persuasive.  <u>Rosenberg v. A T & T Employees Fed. Credit Union</u>,

726 F. Supp. 573 (D.N.J. 1989) (finding that there is no express

private right of action under the FCUA); <u>Acciard v. Whitney</u>,

2010 U.S. Dist. LEXIS 143332, *12-13, 2010 WL 6813952 (M.D. Fla.

Sept. 17, 2010) (same).  As explained in <u>Rosenberg</u>, "[t]here is

nothing in the Federal Credit Union Act itself or in its

legislative history which reveals Congress' intent to create a

private cause of action where a federal credit union[] . . .

[allegedly] breaches its duty to the credit union's members."

<u>Rosenberg</u>, 726 F. Supp. at 577.

Having found that no explicit right of action exists, this

Court will not imply a right of action where doing so would be

contrary to Congressional intent.[10]

---

[9] The Third Circuit issued its decision in <u>Bakos</u> after briefing
in this matter concluded.  <u>Bakos</u> confirms the standard
articulated by <u>Wisniewski</u>, which NCUA relied on its papers.
[10] Numerous federal courts throughout the country – including at

As such, Plaintiff's purported FCUA claim will be dismissed.

**CONCLUSION**

For the reasons set forth in this Opinion, Defendants' Motions to Dismiss (ECF Nos. 22 and 25) will be granted. Counts I, III, and IV of the Amended Complaint will be dismissed with prejudice. Count II of the Amended Complaint will be dismissed without prejudice. Plaintiff may file a second amended complaint consistent with this Opinion and the Order that follows – only on the breach of contract claim (Count II) - within twenty (20) days hereof. An appropriate Order will be entered.


Date: October 28, 2019              s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

least one within this District - have examined whether a private right of action is implied under the FCUA and have resoundingly concluded that "no such implied cause of action exists." Smith v. Dearborn Financial Services, Inc., 982 F.2d 976, 979 (6th Cir. 1993) (citing Barany v. Buller, 670 F.2d 726 (7th Cir. 1982); Ridenour v. Andrews Fed. Credit Union, 897 F.2d 715 (4th Cir. 1990); Heller v. CACL Fed. Credit Union, 775 F. Supp. 839 (E.D. Pa. 1991); Rosenberg, 726 F. Supp. At 573; Montford v. Robins Fed. Credit Union, 691 F. Supp. 347 (M.D. Ga. 1988)); see Barroga-Hayes v. Susan D. Settenbrino, P.C., No. 10-5298, 2012 U.S. Dist. LEXIS 47071, *23 (E.D.N.Y. March 30, 2012); Mioduszewski v. Polish & Slavic Fed. Credit Union, No. 18-6081, 2018 U.S. Dist. LEXIS 190679, *5-6 (E.D.N.Y. Nov. 6, 2018).